E-FILED
Sunday, 22 January, 2023  07:30:32 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| Jana Kampmann, individually and on behalf of all others similarly situated, | 1:23-cv-01021 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Procter & Gamble Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.  The Procter & Gamble Company ("Defendant") manufactures, labels and sells a co-packaged combination of active over-the-counter ("OTC") ingredients marketed for "Severe Cold & Flu" ("DayQuil") with vitamin C ("SuperC") ("Product" or "DayQuil SuperC") under the Vicks brand.



I.  **COMMON COLD AND FLU**

2.  The common cold and flu generally refers to an acute, self-limiting viral infection of

the upper respiratory tract with symptoms including fever, sore throat, nasal discharge and congestion, headache, and cough.

3. Although there is no known cure, many consumers seek nonprescription medications for symptom relief, spending over $8 billion on cough and cold product.

## II. CONSUMER DEMAND FOR VITAMIN C

4. Since the 1970s, vitamin C has been the most popular consumer supplement, with annual sales recently passing half a billion dollars.

5. In a national survey measuring how people responded when they came down with a cold and/or flu, 41% take vitamin C, more than the 37% who consume plenty of water and the 25% who opt for rest or seeing a doctor.

6. Another poll concluded that almost 60% of Americans believe vitamin C is equally effective at treating cold and flu symptoms as traditional OTC products.

7. While consumers value traditional OTC products for colds and flu, they are increasingly seeking such products with more natural, vitamin ingredients like vitamin C.

## III. MISLEADING REPRESENTATION OF VITAMIN C WITH ESTABLISHED COLD AND FLU TREATMENT

8. The cold and flu DayQuil component combines three categories of OTC ingredients, including acetaminophen, an analgesic-antipyretic for pain relief, dextromethorphan HBr, an antitussive or cough suppressant and doxylamine succinate, an antihistamine for sneezing and runny nose.

9. These ingredients have been evaluated by the Food and Drug Administration ("FDA") as suitable to treat "Headache, fever, sore throat, minor aches & pains," "Chest congestion, thins & loosens mucus," "Nasal congestion, sinus pressure," and "Cough," disclosed on the front label.

10. The front label of the SuperC component represents it contains "1,000 mg Vitamin C" along with "B vitamins, green tea, ginseng, [and] turmeric extracts" to "Energize + [and] Replenish," by "Help[ing] [to] replenish essential vitamins + [and] provid[ing] a healthy energy boost.*"

11. By co-packaging vitamin C in a "Daytime Convenience Pack," consumers will expect it is intended to be used with the approved OTC combination for the common therapeutic purpose of alleviating cold and flu symptoms.

12. This is because consumers already believe that consumption of vitamins, especially vitamin C, is effective and beneficial in treating cold and flu symptoms.

13. However, the fine print on one of the sides of the Product states, "THIS PRODUCT IS NOT INTENDED TO TREAT COLDS OR FLU."



14. The FDA considered, but rejected approved OTC combination drugs from adding vitamin C and other vitamins and botanical ingredients touted for prevention and treatment of the common cold, because it concluded that consumers were misled to believe that both components were evaluated and approved for their effectiveness.

15. While the FDA allowed for packaging products together as a "convenience pack," the examples it provided included a "travel kit" containing an antiperspirant, an internal analgesic, toothpaste, sunscreen, and/or a sleep aid.

3

16.     The FDA contemplated allowing two or more shrink-wrapped cartons to be sold as one unit identified as a "special value" or "value pack" only when it was clear to consumers the two components were not intended to be used together for a common purpose, such as treating the symptoms of colds and flu.

## IV.  VITAMIN C NOT EFFECTIVE

17.     While a large majority of the public believe that vitamin C can help fight off the symptoms of a cold and flu, this is false.

18.     When the FDA warned Defendant that adding Vitamin C to its Vicks cold formulas was not permitted, this was because "a panel of experts found 'no study which demonstrated that vitamin C is unequivocally effective for the prevention or treatment of the common cold'" and its symptoms.

19.     Despite numerous clinical studies, vitamin C has failed to demonstrate any reduction in severity or duration of symptoms associated with colds, flu and a runny nose.

20.     Though some studies have shown that regularly taking vitamin C supplements may decrease the duration of cold and flu symptoms, consuming this after symptoms appear – for which consumers would seek the Product – has no effect.

21.     In fact, Consumer Reports concluded that vitamin C consumption could increase the incidence of kidney stones more likely, nausea, stomach discomfort, and negatively interact with a range of medications including blood thinners.

## Jurisdiction and Venue

22.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

23.     The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

24. Plaintiff is a citizen of Illinois.

25. Defendant is a citizen of Ohio.

26. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

27. The members of the classes Plaintiff seek to represent are more than 100, because the Product have been sold with the representations described here from thousands of locations including grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, across the States covered by the proposed classes.

28. Venue is in this District with assignment to the Peoria Division because a substantial part of the events or omissions giving rise to these claims occurred in Fulton County, including Plaintiff's purchase and use of the Product, reliance on the representations, and/or subsequent awareness they were false and misleading.

Parties

29. Plaintiff Jana Kampmann is a citizen of Canton, Fulton County, Illinois.

30. Defendant The Procter & Gamble Company is an Ohio corporation with a principal place of business in Cincinnati, Hamilton County, Ohio.

31. Defendant owns the Vicks brand, known for almost a century as a leader in OTC remedies for common ailments such as colds and flu.

32. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 2071 N Main St, Canton, Illinois 61520, between 2021 and 2023, among other times.

33. Plaintiff knew that traditionally marketed OTC products, based on established

ingredients like acetaminophen, were effective at treating symptoms of cold and flu.

34. Plaintiff read the representaions on the front label of the co-packaged DayQuil and SuperC, and expected the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

35. Plaintiff is like the large majority of Americans who believe that taking vitamin C helps relieve cold and flu symptoms.

36. Plaintiff is like the large majority of Americans who trust OTC medications but increasingly try to consume vitamins to address cold and flu symptoms.

37. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $13.49 per 12 DayQuil capsules and 14 SuperC capsules, excluding tax and sales.

38. Plaintiff bought the Product at or exceeding the above-referenced price.

39. Plaintiff paid more for the Product, would have paid less or not have purchased it had she known the representations and omissions were false and misleading.

40. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

41. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

42. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

43. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other OTC products co-packaged with vitamins and botanical ingredients, because she is

unsure whether those representations are truthful.

## Class Allegations

44. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Utah, South Dakota, Kansas, Mississippi, Arkansas, Alaska and North Carolina who purchased the Product during the statutes of limitations for each cause of action alleged.

45. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

46. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

47. Plaintiff is an adequate representative because her interests do not conflict with other members.

48. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

49. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

50. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

51. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

52. Plaintiff incorporates by reference all preceding paragraphs.

53. Plaintiff purchased the Product expecting the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

54. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

55. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

56. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

57. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

58. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

59. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail,

product descriptions, and targeted digital advertising.

60.  Defendant knew the product attributes that potential customers like Plaintiff were seeking, including increasing consumption of vitamin C to help relieve cold and flu symptoms, and developed its marketing and labeling to directly meet their needs and desires.

61.  The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

62.  Defendant's representations affirmed and promised that the Product's incorporation of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

63.  Defendant described the Product so Plaintiff believed that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit, which became part of the basis of the bargain that it would conform to its affirmations and promises.

64.  Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

65.  This duty is based on Defendant's outsized role in the market for OTC products and custodian of the Vicks brand, which has helped alleviate cold and flu symptoms for close to a century.

66.  Plaintiff recently became aware of Defendant's breach of the Product's warranties.

67.  Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

68. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

69. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

70. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

71. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because she expected that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit, and she relied on its skill and judgment to select or furnish such suitable product.

<u>Negligent Misrepresentation</u>

72. Defendant had a duty to truthfully represent the Product, which it breached.

73. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the custodian of the Vicks brand, consistently rated by Americans as being the most trusted seller of OTC cold and flu products.

74. Defendant's representations regarding the Product went beyond the specific representations on its packaging and labels, as they incorporated its extra-labeling promises and commitments to quality it has been known for.

75. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

76. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

77. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

Fraud

78. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that the addition of vitamin C to a proven OTC product would be similarly effective at treating symptoms of cold and flu, and provide a proven therapeutic benefit.

79. Defendant was aware of the FDA's prohibition of adding vitamin C to cold and flu products, and understood that its co-packaging of the Product was not consistent with the spirit and letter of its current position.

80. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

Unjust Enrichment

81. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated: January 22, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com