# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

|  |  |
|---|---|
| JANA KAMPMANN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Case No. 1:23-cv-01021-JES-JEH |
| v. | |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | |

## DEFENDANT THE PROCTER & GAMBLE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 2

    A.    DayQuil and Super C ......................................................................... 2

    B.    Plaintiff's Lawsuit ............................................................................ 4

PROCEDURAL STANDARD ............................................................................ 5

ARGUMENT ..................................................................................................... 5

I.     PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT P&G ENGAGED IN ANY DECEPTIVE CONDUCT, WHICH DEFEATS ALL OF HER CLAIMS.............. 6

    A.    Plaintiff has not and cannot identify any false or misleading statement by P&G about Super C. ............................................................................ 7

    B.    The Super C label directly refutes Plaintiff's theory. ........................... 10

    C.    The Complaint should be dismissed under the bar on lack-of-substantiation claims. ....................................................................... 12

II.    PLAINTIFF'S CLAIMS SUFFER FROM SEVERAL ADDITIONAL DEFECTS........ 14

    A.    Plaintiff's ICFA claim should be dismissed for failure to plead actual damages........................................................................................... 14

    B.    Plaintiff's warranty claims should be dismissed................................. 16

    C.    Plaintiff's remaining common-law claims should be dismissed........................ 18

    D.    Plaintiff lacks standing to seek injunctive relief. ................................ 20

CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1340 E. 9th St. Realty Corp. v. Campus Pointe Coles, LLC*,
2020 WL 10355052 (C.D. Ill. Dec. 21, 2020) ...........................................................................6

*Akers v. Costco Wholesale Corp.*,
2022 WL 4585417 (S.D. Ill. Sept. 29, 2022) ........................................................................20

*Alleman v. Collection Pros., Inc.*,
2019 WL 5576872 (N.D. Ill. Oct. 29, 2019) ...........................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................................5

*Baldwin v. Star Sci., Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) ................................................................................7, 17

*Beardsall v. CVS Pharmacy, Inc.*,
953 F.3d 969 (7th Cir. 2020) .................................................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................5, 11, 12

*Bertin v. Grant Auto., Inc.*,
2007 WL 1257183 (C.D. Ill. Apr. 30, 2007) .......................................................................14

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) .................................................................................................13

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) .................................................................................. *passim*

*Cheslow v. Ghirardelli Chocolate Co.*,
445 F. Supp. 3d 8 (N.D. Cal. 2020) .......................................................................................9

*Chiappetta v. Kellogg Sales Co.*,
2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ....................................................................16, 17

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) .................................................................................................19

*Connick v. Suzuki Motor Co.*,
675 N.E.2d 584 (Ill. 1996) .............................................................................................16, 17

*Cristia v. Trader Joe's Co.*,
  2022 WL 17551552 (N.D. Ill. Dec. 9, 2022) ...................................................11

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) ........................................................................10

*DeMaso v. Walmart Inc.*,
  2023 WL 1800208 (N.D. Ill. Feb. 7, 2023) ....................................................7

*Dervin v. NBTY, Inc.*,
  2022 WL 2132443 (N.D. Ill. 2022) ...............................................................14

*DiCroce v. McNeil Nutritionals, LLC*,
  2022 WL 16847696 (D. Mass. Nov. 10, 2022) ..............................................11

*Dinerstein v. Google, LLC*,
  484 F. Supp. 3d 561 (N.D. Ill. 2020) ............................................................15

*Doe v. Columbia Coll. Chi.*,
  933 F.3d 849 (7th Cir. 2019) ..........................................................................5

*Dwyer v. Allbirds, Inc.*,
  598 F. Supp. 3d 137 (S.D.N.Y. 2022) ...........................................................17

*Eckler v. Wal-Mart Stores, Inc.*,
  2012 WL 5382218 (S.D. Cal. Nov. 1, 2012) ...........................................11, 12

*Floyd v. Pepperidge Farm, Inc.*,
  581 F. Supp. 3d 1101 (S.D. Ill. 2022) .....................................................10, 11

*Frye v. L'Oreal USA, Inc.*,
  583 F. Supp. 2d 954 (N.D. Ill. 2008) ............................................................14

*Gordon v. Target Corp.*,
  2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) .............................................2, 20

*Gredell v. Wyeth Lab'ys, Inc.*,
  854 N.E.2d 752 (Ill. App. Ct. 2006) ..............................................................13

*Gutierrez v. Johnson & Johnson Consumer Inc.*,
  2021 WL 822721 (S.D. Cal. Jan. 22, 2021).....................................................9

*Guzman v. Walmart Inc.*,
  2023 WL 3455319 (N.D. Ill. May 15, 2023) ...................................................2

*Hauger v. Dollar Gen. Corp.*,
  2022 WL 2532487 (C.D. Ill. July 7, 2022)..................................6, 8, 18, 19

*Hughes v. Ester C Co.*,
    930 F. Supp. 2d 439 (E.D.N.Y. 2013) ...................................................................13

*Huston v. Conagra Brands, Inc.*,
    2022 WL 4647251 (C.D. Ill. Sept. 30, 2022) ..............................................6, 18, 19

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ...................................................................16

*Jackson v. Kraft Heinz Foods Co.*,
    2022 WL 4591749 (N.D. Ill. Aug. 3, 2022) .......................................................8, 10

*Ledezma v. Upfield US Inc.*,
    2022 WL 16553039 (N.D. Ill. Oct. 31, 2022)......................................................8, 12

*Lesorgen v. Mondelez Global, LLC*,
    2023 WL 3568686 (N.D. Ill. May 19, 2023) .......................................................2, 7

*Loreto v. Procter & Gamble Co.*,
    515 F. App'x 576 (6th Cir. 2013) ...................................................................9

*Manley v. Hain Celestial Grp., Inc.*,
    417 F. Supp. 3d 1114 (N.D. Ill. 2019) ...........................................................17, 19

*Matthews v. Polar Corp.*,
    2023 WL 2599871 (N.D. Ill. Mar. 22, 2023)........................................................8

*Matthews v. Polar Corp.*,
    No. 22-cv-649 (N.D. Ill. Apr. 6, 2023) ...........................................................1, 6

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    435 N.E.2d 443 (Ill. 1982) ...................................................................18

*Phillips v. DePaul Univ.*,
    19 N.E.3d 1019 (Ill. App. Ct. 2014) ...........................................................15

*Raczkowski v. Conagra Brands, Inc.*,
    No. 22-cv-2061 (C.D. Ill. Mar. 29, 2023) .......................................................6

*Reinitz v. Kellogg Sales Co.*,
    2022 WL 1813891 (C.D. Ill. June 2, 2022) .......................................6, 16, 17, 19

*Rice v. Dreyer's Grand Ice Cream, Inc.*,
    2022 WL 3908665 (N.D. Ill. Aug. 30, 2022) ......................................................12

*Sabo v. Wellpet, LLC*,
    250 F. Supp. 3d 332 (N.D. Ill. 2017) ...........................................................15

*Schimmer v. Jaguar Cars, Inc.*,
384 F.3d 402 (7th Cir. 2004) ................................................18

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ................................................12, 19

*Troutt v. Mondelez Glob. LLC*,
--- F. Supp. 3d. ---, 2022 WL 16552956 (S.D. Ill. Oct. 31, 2022)....................10, 15

*Turk v. Rubbermaid Inc.*,
2022 WL 836894 (S.D.N.Y. Mar. 21, 2022) ........................................20

*Warren v. Stop & Shop Supermarket, LLC*,
592 F. Supp. 3d 268 (S.D.N.Y. 2022) ................................................17

*Weaver v. Champion Petfoods USA Inc.*,
3 F.4th 927 (7th Cir. 2021) ................................................12

*Wienhoff v. Conagra Brands, Inc.*,
2022 WL 4103974 (S.D. Ill. Sept. 8, 2022)........................................18

*Winston v. Hershey Co.*,
2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020) ........................................9

**Statutes**

15 U.S.C. § 2301 *et seq.*................................................15, 17, 18

15 U.S.C. § 2310(d)(3)(A) ................................................17

15 U.S.C. § 2310(d)(3)(C) ................................................18

**Other Authorities**

80 Fed. Reg. 79776 (proposed Dec. 23, 2015) ................................................3, 9, 19

## INTRODUCTION

Defendant The Procter & Gamble Company ("P&G") markets DayQuil, an over-the-counter medication that has been safely used to treat cold and flu symptoms for nearly fifty years. P&G also markets Super C, a daily dietary supplement that includes vitamin C. Although DayQuil and Super C are sold as wholly separate products, they are sometimes offered together as a "convenience pack" in which the two distinct products are packaged together. In this case, Plaintiff claims that the DayQuil and Super C convenience pack is unlawful because it could inadvertently lead consumers to believe that Super C itself will treat cold and flu symptoms.

The facts in Plaintiff's meager 12-page Complaint fall well short of supporting that theory. First, all of Plaintiff's claims should be dismissed because the Complaint fails to identify a single statement P&G made—on the product label or anywhere else—suggesting that Super C can help alleviate cold and flu symptoms. Instead, the label simply states that Super C "helps replenish essential vitamins." Second, even if Plaintiff had identified a purportedly misleading statement, Plaintiff's claims are irreconcilable with Super C's label, which plainly states: "THIS PRODUCT IS NOT INTENDED TO TREAT COLDS OR FLU." Plaintiff's claims thus rest on the untenable theory that P&G misled consumers into believing that Super C treats colds or flu, when the label says precisely the opposite in all capital letters.

This is not the first time that Plaintiff's counsel has brought implausible claims. As another Judge in this Circuit recently noted, Plaintiff's counsel has filed "consumer fraud cases over and over again, seemingly covering just about every aisle in the grocery store, without much success." *Matthews v. Polar Corp.*, No. 22-cv-649, Dkt. 35 (N.D. Ill. Apr. 6, 2023). By one measure,

motions to dismiss were granted over 80% of the time in those cases.[1]  Here too, Plaintiff alleges zero facts to support the contention that consumers were misled by the convenience pack.  For those reasons, and the additional reasons below, the Complaint should be dismissed.

## BACKGROUND

### A.    DayQuil and Super C

This case involves two distinct products marketed by P&G:  DayQuil Severe Cold & Flu and Super C.  Compl. ¶ 1.  DayQuil is an over-the-counter medication approved by the Food and Drug Administration ("FDA") to relieve cold and flu symptoms such as nasal congestion, cough, headache, and sore throat.  *Id.* ¶¶ 8–9.  Super C is a daily dietary supplement that contains various vitamins and herbal extracts.  *Id.* ¶ 10.  The two products are sold separately in various count sizes and formulations.

---

[1] *See Guzman v. Walmart Inc.*, No. 22-cv-3465, Dkt. 25 at 2 (N.D. Ill. May 22, 2023); *see also Guzman*, 2023 WL 3455319, at *1 (N.D. Ill. May 15, 2023) ("Plaintiff's counsel has peddled this theory time and again, in case after case, without much success in this district.  The complaint joins a warehouse of complaints filed by Plaintiff's counsel that are not fit for public consumption."); *Lesorgen v. Mondelez Global, LLC*, 2023 WL 3568686, at *5 (N.D. Ill. May 19, 2023) ("The Court echoes Judge Seeger's sentiment, and reminds Ms. Lesorgen's counsel of his obligations under Federal Rule of Civil Procedure 11."); *Gordon v. Target Corp.*, 2022 WL 836773, at *19 n.11 (S.D.N.Y. Mar. 18, 2022) ("[T]he Court is well aware that Plaintiff's counsel routinely files cases such as these, which bring identical claims, and that they are just as routinely dismissed for failure to state a claim.").

In addition to DayQuil and Super C being sold separately, the products are also available for purchase together in a "daytime convenience pack." Compl. ¶ 1. The convenience pack includes a set of DayQuil "liquicaps" as well as a set of Super C caplets, both of which are separately labeled and come in their own plastic packaging.



*Id.* ¶ 1. This type of convenience pack is common. As Plaintiff acknowledges, the FDA allows products to be "packaged together for convenience" and sold to consumers as a single unit. 80 Fed. Reg. 79776, 79781 & n.1 (proposed Dec. 23, 2015); *see also* Compl. ¶ 15 (Plaintiff acknowledging that "the FDA allowed for packaging products together as a 'convenience pack'").

Although DayQuil and Super C are offered together in a convenience pack, the label makes clear that DayQuil and Super C are two separate and distinct products. The two products come in different count sizes: 24 liquicaps of DayQuil compared to 28 caplets of Super C. Compl. ¶ 1. The products also have different labels that describe the distinct uses, ingredients, directions, dosage amounts, and warnings for each product. For example, the DayQuil label states that the medication is used to "temporarily relieve[] common cold/flu symptoms," including "nasal congestion," "cough," "minor aches & pains," "headache," "fever," and "sore throat." *Id.* ¶ 13.

- 3 -

By contrast, the Super C label makes no claim about alleviating cold and flu symptoms. Instead, the label states that Super C "helps replenish essential vitamins." Compl. ¶ 1. Moreover, the label states in all capital letters that Super C is not meant to treat cold or flu symptoms:



**THIS PRODUCT IS NOT INTENDED TO TREAT COLDS OR FLU.**

*Directions:* Take 2 caplets daily. For optimal benefits, continued daily use is recommended. Store at room temperature.

**WARNINGS:** Do not use if allergic to any of the ingredients in the product. Consult a healthcare professional before use if pregnant, attempting to become pregnant or nursing, if taking medication or if you have a chronic disease. Keep out of reach of children.

*Id.* ¶ 13 (red box added).

## B.    Plaintiff's Lawsuit

Although the Super C packaging states "THIS PRODUCT IS NOT INTENDED TO TREAT COLDS OR FLU," Compl. ¶ 13, Plaintiff alleges that the convenience pack is deceptive because consumers might believe Super C should be used "for the common therapeutic purpose of alleviating cold and flu symptoms," *id.* ¶ 11. In Plaintiff's view, DayQuil and Super C cannot be sold together in a convenience pack "because consumers already believe that consumption of vitamins, especially vitamin C, is effective and beneficial in treating cold and flu symptoms." *Id.* ¶ 12.

Plaintiff's scant Complaint contains virtually no facts to support those allegations. For example, the Complaint does not identify a *single* instance in which P&G represented that Super C can help alleviate cold and flu symptoms. Nor does the Complaint plead facts suggesting that the mere packaging of DayQuil and Super C together leads consumers to believe that Super C can independently treat colds or flu. Instead, Plaintiff asserts that the convenience pack is misleading—and unlawful—because "the public" holds a pre-existing belief "that vitamin C can help fight off the symptoms of a cold and flu." Compl. ¶ 17; *see also id.* ¶¶ 35–36 (alleging that

"the large majority of Americans . . . try to consume vitamins to address cold and flu symptoms").

Based on those allegations, Plaintiff asserts claims for: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), Compl. ¶¶ 52–53; (2) violations of the "State Consumer Fraud Acts" of seven other states, *id.* ¶¶ 44, 55–57; (3) breaches of various warranties, *id.* ¶¶ 58–71; (3) negligent misrepresentation, *id.* ¶¶ 72–77; (4) fraud, *id.* ¶¶ 78–80; and (5) unjust enrichment, *id.* ¶ 81. Plaintiff brings these claims on behalf of "[a]ll persons" in Illinois, Utah, South Dakota, Kansas, Mississippi, Arkansas, Alaska, and North Carolina "who purchased the [p]roduct during the statutes of limitations." *Id.* ¶ 44.

## PROCEDURAL STANDARD

"To survive a motion to dismiss" under Rule 12(b)(6), "the complaint must 'state a claim for relief that is plausible on its face.'" *Doe v. Columbia Coll. Chi*., 933 F.3d 849, 854 (7th Cir. 2019) (citation omitted). A plaintiff is required to "plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, like all theories of fraud, claims of consumer deception are subject to "the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b)." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Under that standard, a plaintiff is required to "describ[e] the who, what, when, where, and how of the fraud." *Id.* at 737.

## ARGUMENT

The Complaint makes the same types of allegations about consumer fraud as the hundreds of other cases filed by Plaintiff's counsel in this Circuit and across the country. A recent inventory

reflects that more than 100 of those cases have been dismissed, including at least four in this District.  *See Matthews*, No. 22-cv-649, Dkt. 38.[2]  Here, as in those cases, Plaintiff's Complaint should likewise "exit[] the courthouse on [a] motion[] to dismiss" for failing to plead facts to support a plausible claim.  *Id.* Dkt. 35.

## I.   PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT P&G ENGAGED IN ANY DECEPTIVE CONDUCT, WHICH DEFEATS ALL OF HER CLAIMS.

Plaintiff's claims face a threshold problem:  the Complaint fails to plausibly allege that a convenience pack of DayQuil and Super C is false or misleading in any fashion.

Under Illinois law, all of Plaintiff's claims require allegations that the defendant made a false, misleading, or inaccurate statement.  *See Reinitz*, 2022 WL 1813891, at *3, 5–6 (ICFA, warranty, common-law fraud, unjust enrichment); *1340 E. 9th St. Realty Corp. v. Campus Pointe Coles, LLC*, 2020 WL 10355052, at *3 (C.D. Ill. Dec. 21, 2020) (negligent misrepresentation).  For purposes of the ICFA and warranty claims, Plaintiff must show "that a reasonable consumer would be deceived by the labeling of the product."  *Reinitz*, 2022 WL 1813891, at *3, 5.  Fraud, however, requires an actual "false statement of material fact."  *Id.* at *5.  It is well settled that "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law."  *Hauger*, 2022 WL 2532487, at *3.

Here, Plaintiff contends that offering DayQuil and Super C in a convenience pack allegedly deceives consumers into believing that Super C can independently treat cold or flu symptoms.  *E.g.*, Compl. ¶ 34.  That theory fails for three independent reasons.  First, the Complaint does not identify a single statement by P&G suggesting that Super C can alleviate cold or flu symptoms,

---

[2] *Reinitz v. Kellogg Sales Co.*, 2022 WL 1813891 (C.D. Ill. June 2, 2022) (Shadid, J.); *Hauger v. Dollar Gen. Corp.*, 2022 WL 2532487 (C.D. Ill. July 7, 2022) (Shadid, J.); *Huston v. Conagra Brands, Inc.*, 2022 WL 4647251 (C.D. Ill. Sept. 30, 2022); *Raczkowski v. Conagra Brands, Inc.*, No. 22-cv-2061, Dkt. 25 (C.D. Ill. Mar. 29, 2023).

which is a necessary prerequisite for all of Plaintiff's claims.  Second, Plaintiff's claims are directly

contradicted by Super C's label, which says: "THIS PRODUCT IS NOT INTENDED TO TREAT

COLDS OR FLU."  *Id.* ¶ 13.  Third, Plaintiff's claims are barred by the rule prohibiting "lack-of-

substantiation" claims, *i.e.*, a claim that a given statement is unsupported or unsubstantiated by

scientific evidence.

### A.   Plaintiff has not and cannot identify any false or misleading statement by P&G about Super C.

The Complaint fails at the start because Plaintiff has not alleged any false or misleading

statement by P&G about the function of Super C.  The Seventh Circuit has held that a plaintiff

asserting consumer fraud must identify a specific "representation" that "show[s] what was

supposedly advertised."  *Camasta*, 761 F.3d at 738.  A plaintiff cannot "actually be deceived"

unless she can show that "the defendant made a deceptive communication."  *Alleman v. Collection

Pros., Inc.*, 2019 WL 5576872, at *6 (N.D. Ill. Oct. 29, 2019).  For that reason, a complaint that

does not allege any "specific misrepresentations" is "insufficient."  *Baldwin v. Star Sci., Inc.*, 78

F. Supp. 3d 724, 737 (N.D. Ill. 2015); *see also Lesorgen*, 2023 WL 3568686, at *4 (dismissing

consumer fraud claim where plaintiff did not identify any "specific . . . claim" on the product

label); *DeMaso v. Walmart Inc.*, 2023 WL 1800208, at *4 (N.D. Ill. Feb. 7, 2023) (dismissing

consumer fraud claim because "[t]he front label makes no specific . . . claim at all").

Plaintiff's claims fail this threshold requirement.  Plaintiff has not identified a single

representation—on the product label or anywhere else—suggesting that Super C can

independently treat cold and flu symptoms.  While the Complaint refers to certain statements about

"Headache, Fever, Sore Throat," "Chest Congestion, "Nasal Congestion," and "Cough," Plaintiff

acknowledges that those statements appear **on the label for DayQuil**—a medication that has been

approved by the FDA for treating those symptoms.  Compl. ¶¶ 1, 8–9.  The Super C label, by

contrast, claims only that the product can help "replenish essential vitamins." *Id.* Without identifying any statement about Super C that was supposedly false or misleading, Plaintiff's consumer deception claims cannot proceed. *See Matthews v. Polar Corp.*, 2023 WL 2599871, at *9 (N.D. Ill. Mar. 22, 2023) ("[T]he complaint fails because it is attempting to put words into the manufacturer's mouth. Consumers cannot impose content that isn't there, and impute meaning that is not fairly derived from the labeling itself."); *Ledezma v. Upfield US Inc.*, 2022 WL 16553039, at *4 (N.D. Ill. Oct. 31, 2022) (dismissing consumer fraud claims where "the label provides no objectively reasonable basis for [plaintiff]'s claimed belief"); *Hauger*, 2022 WL 2532487, at *4 (dismissing consumer fraud claims where "the product makes no indication" about issue plaintiff claimed to be misleading); *Jackson v. Kraft Heinz Foods Co.*, 2022 WL 4591749, at *4 (N.D. Ill. Aug. 3, 2022) ("Because nothing on the label is untrue or implies something false, it cannot mislead as a matter of law.").

Having failed to identify any misleading statement by P&G about Super C, Plaintiff is left with the vague allegation that P&G engaged in deceptive conduct "[b]y co-packaging vitamin C in a 'Daytime Convenience Pack.'" Compl. ¶ 11. But there are no accompanying factual allegations indicating that the convenience pack *could cause* reasonable consumers to believe that Super C can independently alleviate cold or flu symptoms. Instead, Plaintiff alleges that "consumers *already believe* that consumption of vitamins, especially vitamin C, is effective and beneficial in treating cold and flu symptoms." *Id.* ¶ 12 (emphasis added); *id.* ¶ 17 (alleging that "a large majority of the public believe that vitamin C can help fight off the symptoms of a cold and flu"). In other words, Plaintiff claims that the convenience pack is unlawful *not* because of anything that P&G actually said or did, but rather because consumers supposedly hold pre-existing beliefs about the ability of vitamins to help treat colds and flu.

To P&G's knowledge, no court has ever accepted Plaintiff's novel theory of deception in which a manufacturer can be held liable for deceptive advertising simply by packaging two separate products together.  On the contrary, numerous courts have rejected the contention that mere proximity of two products is enough to state a plausible consumer fraud claim.  The reason for those decisions is self-evident:  permitting claims based solely on the placement of consumer products would subject a wide swath of retail marketing decisions to potential civil liability.  *See, e.g.*, *Winston v. Hershey Co.*, 2020 WL 8025385, at *5 (E.D.N.Y. Oct. 26, 2020) (dismissing consumer fraud claims because "mere placement of the product alongside other[s] . . . would not cause a reasonable consumer to suddenly be misled"); *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 22 (N.D. Cal. 2020) ("Given the lack of false or deceptive statements, the placement of the product among other [types of] products does not support plaintiffs' false advertising claims."); *Gutierrez v. Johnson & Johnson Consumer Inc.*, 2021 WL 822721, at *7 (S.D. Cal. Jan. 22, 2021) ("[W]ithout more facts, Plaintiffs have not adequately shown that their interpretation of [defendant]'s product placement meets the plausibility standard to survive a motion to dismiss.").

Plaintiff attempts to overcome this line of authority by referring to the FDA's rejection of "OTC combination drugs" that included vitamin C.  Compl. ¶¶ 14, 18.  Those products, however, combined both vitamin C and over-the-counter cold medicine in a single tablet.  *Id.*  Here, by contrast, the convenience pack makes clear that DayQuil and Super C are two different products with their own individual packaging and directions.  *Id.* ¶ 1; *supra* at 2–4.  As noted above, there is nothing unlawful about bundling two separate products together to make it easier for consumers who wish to purchase both.  To the contrary, the FDA has taken the position that separate products may be "packaged together for convenience," even when they "are not intended to be used together

for a common or related therapeutic purpose."  80 Fed. Reg. 79776, 79781 & n.1 (proposed Dec. 23, 2015).[3]

B.    **The Super C label directly refutes Plaintiff's theory.**

Even if Plaintiff had challenged a specific misleading statement by P&G, the product label itself dispels any confusion.  As Plaintiff admits in her Complaint, the Super C label states that "THIS PRODUCT IS NOT INTENDED TO TREAT COLDS OR FLU."  Compl. ¶ 13.  That statement is displayed prominently along with directions and dosing instructions:



*Id.*  Plaintiff's theory—that she and other consumers erroneously believed that Super C can independently help alleviate cold or flu symptoms—is plainly inconsistent with the Super C label.  Plaintiff's claims thus depend on the faulty premise that consumers cannot be expected to review a label to understand a product's function.  That is not the law.

In analyzing claims of consumer fraud, "the allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff."  *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).  In particular, "clarifying language" on a product label may be considered as part of the relevant "context" of that information.  *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1109 (S.D. Ill. 2022).  Where, as here, "there is no implication beyond

---

[3] Plaintiff may cite *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576 (6th Cir. 2013), but that case involved a combination drug and not the convenience pack at issue here.  Moreover, *Loreto* confirms that Plaintiff's claims should be dismissed.  The court in that case affirmed the dismissal of analogous false advertising claims as "neither false nor plausibly misleading."  *Id.* at 582 & n.3.  The sole surviving claim was based on the promise that vitamin C "can help blunt" cold symptoms—which is precisely the kind of statement that P&G never made about Super C.  *Id.*

what the unambiguous description of the [p]roduct on the label actually says," claims of consumer

deception fail as a matter of law. *Jackson*, 2022 WL 4591749, at *4; *see also Troutt v. Mondelez*

*Glob. LLC*, --- F. Supp. 3d. ---, 2022 WL 16552956, at *4 (S.D. Ill. Oct. 31, 2022) ("Numerous

district courts within this circuit have . . . recently dismissed deceptive advertising claims finding

that the labels are unambiguous.").

　　These principles require dismissal of the Complaint.  The product label here states in no

uncertain terms that Super C can help "replenish essential vitamins" and "IS NOT INTENDED

TO TREAT COLDS OR FLU."  Compl. ¶¶ 1, 13.  Since the label cannot be reconciled with

Plaintiff's claims, the Complaint should be dismissed.  *See, e.g.*, *Floyd*, 581 F. Supp. 3d at 1109

(dismissing consumer fraud claims based on entire label); *Cristia v. Trader Joe's Co.*, 2022 WL

17551552, at *4 (N.D. Ill. Dec. 9, 2022) (considering "side label" of product in dismissing

consumer fraud claims).[4]

　　Plaintiff may seek to avoid the clear language on the label by citing *Bell v. Publix Super*

*Markets, Inc.*, 982 F.3d 468 (7th Cir. 2020), but that case is no help.  *Bell* stands for the

unremarkable proposition that fine-print disclosures on the back of a product label (like an

ingredient list) do not *automatically* "immunize[]" an otherwise ambiguous or misleading product

label.  *Id.* at 477.  But the Complaint does not allege that the Super C label is otherwise ambiguous

or misleading—again, the alleged confusion is admittedly a product of Plaintiff's subjective, pre-

existing beliefs about the ability of vitamin C to alleviate cold or flu symptoms.  More generally,

*Bell* "st[oo]d by the general principle that deceptive advertising claims should take into account

---

[4]  Courts from outside this Circuit have held that similar language on product labels defeats false
advertising claims.  *See also DiCroce v. McNeil Nutritionals, LLC*, 2022 WL 16847696, at *2 (D.
Mass. Nov. 10, 2022) (rejecting claims of consumer deception where label stated product "is not
intended to diagnose, treat, cure or prevent any disease" (capitalization omitted)); *Eckler v. Wal-*
*Mart Stores, Inc.*, 2012 WL 5382218, at *6–7, n.9 (S.D. Cal. Nov. 1, 2012) (similar).

*all* the information available to consumers and the context in which that information is provided and used."  *Id.* at 477 (emphasis added).

Here, there are no statements on the Super C label suggesting that it can help treat cold or flu symptoms.  Instead, the label does just the opposite:  it expressly disclaims any such promise or representation.  Accordingly, "*Bell* is inapposite here because the . . . product's label—front, back, or otherwise—contains no ambiguity potentially deceptive to a reasonable consumer." *Ledezma*, 2022 WL 16553039, at *5; *see also Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) ("Unlike in *Bell*, here [defendant]'s packaging did not represent that it was made with 100% fresh regional ingredients."); *Rice v. Dreyer's Grand Ice Cream, Inc.*, 2022 WL 3908665, at *4 (N.D. Ill. Aug. 30, 2022)  ("Under the standard articulated in *Bell*, [plaintiff]'s ICFA claim fails as a matter of law because he does not identify any ambiguous statement on the product's front label.").

### C.     The Complaint should be dismissed under the bar on lack-of-substantiation claims.

Plaintiff's claims face a third defect:  they improperly rely on a lack-of-substantiation theory.  Rather than pleading facts demonstrating that vitamin C is *not* effective in treating cold and flu, the Complaint merely alleges that there is "no study which demonstrated that vitamin C is unequivocally effective" at reducing symptoms.  Compl. ¶ 18 (quotation marks omitted).

It is well settled, however, that "lack of substantiation is deceptive only when the claim at issue implies there is substantiation for that claim, *i.e.*, if defendants had claimed something along the lines of 'tests show that the product in question is effective.'"  *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 666 (N.D. Ill. 2016) (citation omitted).  As one court explained:  "There is a difference, intuitively, between a claim that has no evidentiary support one way or the other and a claim that's actually been disproved.   In common usage, we might say that both are

'unsubstantiated,' but the caselaw (and common sense) imply that in the context of a false advertising lawsuit an 'unsubstantiated' claim is only the former." *Eckler*, 2012 WL 5382218, at *3.   Accordingly, "if [p]laintiff is unable to allege actual falsity and instead must rely on an establishment or lack of substantiation claim, then she is out of court."  *Spector*, 178 F. Supp. 3d at 666; *see also Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 n.2 (7th Cir. 2001) ("lack of substantiation is deceptive only when the comparative claim at issue implies that there is substantiation for the claim made"); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 458–59 (E.D.N.Y. 2013) (surveying lack-of-substantiation cases, including in Illinois).[5]

Here, P&G is not alleged to have made any claims along the lines of "tests show" that Super C alleviates cold or flu symptoms.  Accordingly, the bar on lack of substantiation claims requires dismissal.  The only factual allegation in the Complaint about vitamin C is the contention that "no study . . . demonstrated that vitamin C is unequivocally effective for the prevention or treatment of the common cold."  Compl. ¶ 18 (quotation marks omitted).  But the allegation that "there is no scientific evidence supporting a product's representation[]" cannot support a plausible claim that the representation is *in fact* false or misleading.  *Hughes*, 930 F. Supp. 2d at 455–59.

The decision in *Gredell v. Wyeth Lab'ys, Inc.*, 854 N.E.2d 752 (Ill. App. Ct. 2006), is directly on point.  In that case, the plaintiff alleged that pharmaceutical products had been deceptively marketed as an effective cold treatment, even though defendants knew they had no scientific evidence to support that claim.  *Id.* at 754.  The Illinois Appellate Court rejected that theory of deception, holding that plaintiff had asserted nothing more than a lack of substantiation.

---

[5] This rule derives from the distinction between private civil suits and public enforcement: "[I]n private consumer deception claims, the plaintiff bears the burden of proving the defendant's advertising claim is false or misleading. Private individuals—unlike the Federal Trade Commission—may not bring an action without supporting evidence and merely demand that the defendant prove the claim it makes for its products."  *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 977 (7th Cir. 2020).

*Id.* at 756. "Merely because a fact is unsupported by clinical tests," the court explained, "does not make it untrue." *Id.* In the absence of any allegations that "defendants had claimed something along the lines of 'tests show that [the product] is effective for cough suppression,'" the plaintiff's claims failed as a matter of law. *Id.* The same outcome is warranted here.

## II. PLAINTIFF'S CLAIMS SUFFER FROM SEVERAL ADDITIONAL DEFECTS.

Because all of Plaintiff's claims are premised on the same theory, the failure to plausibly allege any deceptive conduct is reason enough to dismiss the Complaint. Even if that were not the case, each of Plaintiff's claims would be subject to dismissal for several other reasons as well.

### A. Plaintiff's ICFA claim should be dismissed for failure to plead actual damages.

Plaintiff's ICFA claim fails because the Complaint does not allege actual damages. "[A]n action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta*, 761 F.3d at 739 (quoting 815 ILCS 505/10a). To satisfy this requirement, "plaintiff must allege that she has been harmed in a concrete, ascertainable way." *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). In false advertising cases, "an ICFA claim should be dismissed for failure to plead an injury when the plaintiff does not allege that the product at issue failed to work for them personally." *Dervin v. NBTY, Inc.*, 2022 WL 2132443, at *4 (N.D. Ill. 2022) (collecting cases).

The Complaint here suffers from precisely that flaw. The sum total of Plaintiff's allegations about her personal experience with Super C is a single, conclusory sentence: "Plaintiff purchased the [p]roduct on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walmart, 2071 N Main St, Canton, Illinois 61520, between 2021 and 2023, among other times." Compl. ¶ 32. The Complaint is silent as to any damage or monetary loss Plaintiff suffered in connection with her purchase of the convenience pack. Plaintiff does not allege that taking Super C along with DayQuil caused her any harm, or that Super C

actually failed to provide its advertised benefits. There is simply no detail at all about Plaintiff's own experience using the product. Dismissal is warranted on this basis alone. *See Bertin v. Grant Auto., Inc.*, 2007 WL 1257183, at \*8 (C.D. Ill. Apr. 30, 2007) (rejecting ICFA claim where plaintiffs failed to show "that they have suffered actual damages").

Plaintiff cannot save her ICFA claim by vaguely alleging that she overpaid for the convenience pack. Although the Complaint asserts that Plaintiff "would have paid less or not have purchased" the product absent the allegedly false or misleading statements, Compl. ¶ 39, these types of conclusory statements are not enough to satisfy the element of actual damages. For example, in *Sabo v. Wellpet, LLC*, 250 F. Supp. 3d 332 (N.D. Ill. 2017), the court rejected the plaintiff's allegation that he "paid more for the products than they were actually worth" as "too speculative to support an inference of actual damages" absent "any factual foundation to moor his subjective estimation of the products' worth." *Id.* at 337 (dismissing ICFA claims). "Without any facts to support [her] conclusory assertions of actual damage, [Plaintiff] has not sufficiently pleaded that [she] paid more than the actual value of the merchandise [she] received." *Camasta*, 761 F.3d at 740; *see also Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 579 (N.D. Ill. 2020) (rejecting "overpayment theory" based on allegation that plaintiff would have "paid less"); *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1034 (Ill. App. Ct. 2014) ("Damages [under the ICFA] may not be predicated on mere speculation, hypothesis, conjecture or whim."). Plaintiff's failure to plead actual damages thus provides another basis for dismissing the ICFA claim.[6]

---

[6] The Complaint asserts claims under seven other unidentified state consumer protection laws. Compl. ¶¶ 44, 55–57. Because Plaintiff has failed to plead her individual claim under the ICFA, the claims under other state laws should also be dismissed. *See Troutt*, 2022 WL 16552956, at \*5 (dismissing similar claims where plaintiff "failed to sufficiently plead a colorable ICFA claim").

B.       **Plaintiff's warranty claims should be dismissed.**

The Complaint also asserts claims for breach of express warranty, breach of implied warranty, and violation of the Magnuson-Moss Warranty Act ("MMWA").  *See* Compl. ¶¶ 58–71. For multiple reasons, each of these claims should be dismissed.

**Express warranty**:  To state an express warranty claim, "Plaintiff must sufficiently plead that the defendant: (1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the affirmation or promise."  *Reinitz*, 2022 WL 1813891, at *5 (quotation marks omitted).  Plaintiff's express warranty claim should be dismissed because, for the reasons explained above (*supra* at 7–9), the Complaint does not allege that P&G ever made any statement suggesting that Super C can help treat cold and flu symptoms.  Without any such statement, Plaintiff cannot claim that P&G *expressly* warranted that Super C should be used to treat cold and flu symptoms.  *See Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *6 (N.D. Ill. Mar. 1, 2022) ("The [p]roduct comported with its packaging.  This is fatal to [plaintiff]'s claims for breach of express and implied warranties.").

The express warranty claim should also be dismissed because Plaintiff failed to provide P&G with timely pre-suit notice.  Under Illinois law, "[b]uyers seeking to sue for breach of express . . . warranties must first notify the seller of its breach."  *Chiappetta*, 2022 WL 602505, at *5 (N.D. Ill. Mar. 1, 2022).  Failure to allege timely notice is grounds for dismissing a breach of warranty claim.  *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015) ("[B]ecause [plaintiff] did not satisfy the notice requirement, her express warranty claim is dismissed.").

Plaintiff provided no such notice here.  Instead, Plaintiff relies on the bald assertion that she "provided or provides notice" of its alleged breach, and that P&G "received notice and should have been aware of these issues due to complaints by consumers and third-parties."  Compl. ¶¶ 67–

- 16 -

68.  But "a consumer plaintiff" may satisfy the notice requirement "by filing a complaint" *only* where she has "suffer[ed] a personal injury," *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996), and Plaintiff has not alleged any such injuries here.  "The purpose of the notice requirement is to encourage parties to resolve the dispute short of litigation," which is not possible when a buyer files suit without giving notice beforehand.  *Ibarrola*, 83 F. Supp. 3d at 760.  The allegation that P&G "received notice" from third parties (Compl. ¶ 68) is likewise insufficient, because Plaintiff has not alleged that P&G was "somehow apprised of the trouble with the *particular product* purchased by a *particular buyer*."  *Connick*, 675 N.E.2d at 590 (emphasis added).[7]

**Implied warranty:**  Plaintiff's implied warranty claim similarly fails for lack of pre-suit notice.  *See Chiappetta*, 2022 WL 602505, at *5 (applying notice requirement to implied warranty claims).  The implied warranty claim should also be dismissed because Plaintiff did not purchase the product directly from P&G.  "Illinois law requires privity of contract for claims of breach of implied warranty."  *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019).  There is no dispute that Plaintiff did not purchase the convenience pack from P&G.  She allegedly purchased the product from "stores including Walmart."  Compl. ¶ 32.  Her implied warranty claim thus fails as a matter of law.  *See Baldwin*, 78 F. Supp. 3d at 740–41 (dismissing warranty claims where plaintiff did not purchase product directly from defendant).

**MMWA:**  "In claims brought under the MMWA, state law governs the creation of implied warranties."  *Reinitz*, 2022 WL 1813891, at *5.  "As Plaintiff does not have viable state-law

---

[7] Courts have rejected similar allegations by Plaintiff's counsel as "too conclusory and non-specific to adequately plead the required notice."  *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 155 (S.D.N.Y. 2022) (collecting cases and dismissing warranty claim); *see also Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 286 (S.D.N.Y. 2022) (rejecting similar allegation as "wholly equivocal" and dismissing warranty claims).

warranty claims, she cannot proceed under Manguson-Moss." *Id.*; *see also Hauger*, 2022 WL 2532487, at *5 (similar).

The MMWA claim is also defective for two additional reasons. *First*, Plaintiff has not met the $25 amount-in-controversy threshold for MMWA claims. Under the statute, "[n]o claim shall be cognizable . . . if the amount in controversy of any individual claim is less than the sum or value of $25." 15 U.S.C. § 2310(d)(3)(A). Plaintiff does not allege that she paid more than $25 for her purchase of the daytime convenience pack—nor could she, in light of her own allegation that the product costs $13.49. *See* Compl. ¶ 37. She is therefore statutorily barred from asserting a MMWA claim. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406 (7th Cir. 2004) (affirming dismissal of MMWA claim where parallel amount-in-controversy requirement was not satisfied).

*Second*, MMWA claims are only permitted if the number of named plaintiffs exceeds 100. *See* 15 U.S.C. § 2310(d)(3)(C) ("No claim shall be cognizable . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."). Because Plaintiff is the sole named plaintiff in this action, she does not meet the 100-named-plaintiff requirement. *See Wienhoff v. Conagra Brands, Inc.*, 2022 WL 4103974, at *7 (S.D. Ill. Sept. 8, 2022) (dismissing MMWA claim where plaintiff "has not named any plaintiffs besides herself").

### C. Plaintiff's remaining common-law claims should be dismissed.

The Complaint also fails to state any plausible claims for negligent misrepresentation, fraud, or unjust enrichment.

**Negligent misrepresentation:** Plaintiff's negligent misrepresentation claim fails for the reasons already outlined above: the Complaint does not plausibly allege "a false statement of material fact" about the effectiveness of Super C in treating cold and flu symptoms. *See Huston*, 2022 WL 4647251, at *7 (dismissing negligent misrepresentation claim).

This claim is also barred by the economic loss rule, "which prevents recovery in tort for a

purely economic loss." *Hauger*, 2022 WL 2532487 at *5. Under Illinois law, "[t]he remedy for economic loss"—including "loss relating to a purchaser's disappointed expectations"—"lies in contract." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982). Because Plaintiff "seeks as damages the cost of the product," the economic loss rule applies with full force. *Manley*, 417 F. Supp. 3d at 1120 (dismissing negligent misrepresentation claim). The exception for "one who is in the business of supplying information for the guidance of others in their business transactions" does not apply because, at best, Plaintiff alleges that P&G "provide[s] information ancillary to the sale of a product." *Id.*

**Fraud:** In addition to Plaintiff's failure to allege that there is anything deceptive about the product label, the fraud claim should also be dismissed for lack of fraudulent intent. A plaintiff asserting a fraud claim "must sufficiently plead *scienter*," meaning the defendant "intentionally made a false statement of material fact for the purpose of inducing reliance thereon." *Hauger*, 2022 WL 2532487, at *6. The Complaint here contains no such allegations. Instead, Plaintiff relies on the vague allegation that P&G "understood that its co-packaging of the [p]roduct was not consistent with" FDA guidelines. Compl. ¶ 79. But that is not the FDA's position: as explained above (*supra* at 3, 9), products may be "packaged together for convenience" even when they "are not intended to be used together for a common or related therapeutic purpose." 80 Fed. Reg. 79776, 79781 & n.1 (proposed Dec. 23, 2015). Without "any non-conclusory allegations" that P&G "knew that its use of the label" on the convenience pack "constituted a false statement or intended to defraud," Plaintiff's fraud claim cannot proceed. *Huston*, 2022 WL 4647251, at *8.

**Unjust enrichment:** As this Court has previously recognized, "Plaintiff cannot proceed with a claim for unjust enrichment where she has failed to successfully plead an action for fraud." *Reinitz*, 2022 WL 1813891, at *6. An unjust enrichment claim that "rests on the same improper

- 19 -

conduct alleged in another claim" will "stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Here, Plaintiff does not assert any independent theory of unjust enrichment—indeed, the entire claim is limited to one single paragraph. *See* Compl. ¶ 81. Because the Complaint fails to state any viable claims for the reasons already explained, Plaintiff's unjust enrichment claim should likewise be dismissed. *See Spector*, 178 F. Supp. 3d at 674 (dismissing unjust enrichment claim "predicated on the same allegations of deceptive advertising as [p]laintiff's ICFA and breach of express warranty claims").

### D.     Plaintiff lacks standing to seek injunctive relief.

Finally, even if Plaintiff's claims could overcome dismissal, she lacks standing to seek injunctive relief because she alleges to now know that Super C does not treat cold or flu symptoms. *See* Compl. ¶¶ 17–20, 39. A plaintiff who is "now aware" of the allegedly deceptive practice cannot claim "to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741; *see also Akers v. Costco Wholesale Corp.*, 2022 WL 4585417, at *7 (S.D. Ill. Sept. 29, 2022) (denying injunctive relief because "[plaintiff] is aware of the [product]'s label . . . and would not likely be harmed by such representation in the future"). Other courts have rejected claims for injunctive relief brought by Plaintiff's counsel in similar circumstances. *See, e.g.*, *Turk v. Rubbermaid Inc.*, 2022 WL 836894, at *6 n.1 (S.D.N.Y. Mar. 21, 2022) ("Should Plaintiffs' counsel attempt to bring another plainly frivolous claim for injunctive relief on behalf of a past purchaser before this Court, the Court will impose Rule 11 sanctions."); *Gordon*, 2022 WL 836773, at *9 n.3 ("This is far from the first time that Plaintiff's counsel has unsuccessfully attempted to argue that his client was entitled to injunctive relief under analogous circumstances.").

### CONCLUSION

The Court should dismiss the Complaint in its entirety.

Dated:  May 26, 2023                    Respectfully Submitted:

*/s/  P. Russell Perdew*
P. Russell Perdew (lead counsel)
Alyssa M. Gregory
LOCKE LORD LLP
111 S. Wacker Drive
Chicago, IL 60606
Telephone:  (312) 443-1712
Fax:  (312) 896-6712
rperdew@lockelord.com
alyssa.gregory@lockelord.com

*Attorneys for Defendant*
*The Procter & Gamble Company*

**CERTIFICATE**

I hereby certify that this memorandum complies with the type volume limitation set forth in Local Rule 7.1(B)(4)(b)(1), as the memorandum contains 6,471 words (excluding the cover page, Table of Contents, Table of Authorities, and signature block).

*/s/ P. Russell Perdew*
P. Russell Perdew
