UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JANA KAMPMANN, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 23-cv-1021-JES-JEH ) |
| THE PROCTOR & GAMBLE COMPANY, | ) ) |
| Defendant. | ) |

## <u>ORDER AND OPINION</u>

Plaintiff, Jana Kampmann, filed this suit on behalf of herself and others similarly situated, alleging that Defendant Proctor & Gamble Company, ("Defendant") ("P&G") packaged its Vicks brand[1] DayQuil[2] cold relief medicine and a vitamin C supplement, Super C ("Vitamin C"), together in a *Daytime Convenience Pack*, with the intent to deceive consumers into believing that Super C independently treats cold and flu symptoms. P&G moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), claiming that it has never made such a claim. Defendant reproduces the back label of the Super C package which states in all capital letters "THIS PRODUCT IS NOT INTENDED TO TREAT COLDS OR FLU." (Doc. 7) *Id.* at ¶ 13. Plaintiff has filed a Memorandum in Opposition (Doc. 10), and with leave of Court, Defendant has filed a Reply (Doc. 12). For the reasons indicated herein, Defendant's Motion to Dismiss is GRANTED, although Plaintiff will be given leave to replead.

---

[1] *See* (Doc. 1 at ¶ 31 "Defendants owns the Vicks brand, known for almost a century as a leader in OTC [over-the-counter] remedies for common ailments such as colds and flu."

[2] Plaintiff pleads that DayQuil is an OTC medication whose ingredients "have been evaluated by the Food and Drug Administration ('FDA') as suitable to treat 'Headache, fever, sore throat, minor aches & pains,' 'Chest congestion, thins & loosens mucus,' 'Nasal congestion, sinus pressure,' and 'Cough[.]'" (Doc. 1 at § 9).

## BACKGROUND

The following facts are taken from Plaintiff's Complaint, which the Court accepts as true for the purposes of a motion to dismiss. *Fehlman v. Mankowski*, 74 F.4th 872, 874 (7th Cir. 2023). Plaintiff, a citizen of Illinois, has filed a complaint asserting the Court's jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. ¶ 1332(d)(2). Plaintiff moves on her own behalf as well as that of putative class members in Illinois, Alaska, Arkansas, Kansas, Mississippi, North Carolina, South Dakota, and Utah. She alleges that Defendant's convenience pack, offering DayQuil and Super C packaged side-by-side, violates the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.; and the State Consumer Fraud Acts, not otherwise identified, of Alaska, Arkansas, Kansas, Mississippi, North Carolina, South Dakota, and Utah. Plaintiff also alleges that the packaging violated express and implied warranties of merchantability/fitness for a particular purpose, amounted to a negligent misrepresentation, constituted common law fraud, and resulted in unjust enrichment to Defendant. Plaintiff requests money damages and injunctive relief. Plaintiff had also pled a violation of the Magnuson Moss Warranty Act, 15 U.S.C. ¶¶ 2301, et seq., but withdrew this claim in her response. *See* (Doc. 10 at 7 n.1).

Plaintiff pleads that during the applicable statute of limitations, she purchased the DayQuil convenience pack at stores including the Walmart Store in Canton, Illinois. She also pleads that "persons in the States of Utah, South Dakota, Kansas, Mississippi, Arkansas, Alaska, and North Carolina" purchased the product in those states during the applicable statute of limitations. (Doc. 1 ¶ 44).

A picture of the front of the convenience pack is reproduced below:



Plaintiff pleads that she was aware that products like DayQuil, which contain acetaminophen, are effective at treating symptoms of cold and flu. *Id.* at ¶ 34. Plaintiff also pleads that at the time, she "like the large majority of Americans" believed that vitamin C "helps relieve cold and flu symptoms." *Id.* at ¶ 35. She asserts that a "national survey" found that "41% [of respondents] take vitamin C when they came down with a cold and/or flu . . . 60% of Americans believe vitamin C is equally effective at treating cold and flu symptoms as traditional OTC products . . . [and] consumers already believe that consumption of vitamins, especially vitamin C, is effective and beneficial in treating cold and flu symptoms." (Id. at ¶¶ 5-6, 12).

Plaintiff asserts that, despite the common misconception, vitamin C is not an effective treatment for colds and flu symptoms. She pleads that numerous clinical studies have failed to substantiate that vitamin C will reduce the severity or duration of symptoms once they appear. *Id.* at ¶ 19. Studies have shown, however, that regularly taking vitamin C may decrease the duration once colds or flu develop. *Id.* at ¶ 20. Plaintiff asserts, without any particular support, that consumers would not seek out a product that co-packages one item, to be taken regularly to

potentially decrease the duration of viral infection, with another meant to treat the symptoms of infection. She claims that she, and other consumers, seek the product only when symptoms appear, and in these circumstances, vitamin C "has no effect." *Id*.

Plaintiff pleads that P&G packaged the items side-by-side to play into the public's misconception that vitamin C is effective in treating colds and flu. Plaintiff asserts that the FDA specifically rejected manufacturers' attempts to combine vitamin C and other vitamins with OTC cold remedies, finding that this would mislead consumers into believing that the vitamins, themselves, were an effective treatment. *Id.* at ¶ 14. As Defendant notes, however, the referenced products sought to combine vitamin C and other OTC products in a single tablet, rather than as separate items in a combined pack. (Doc. 8 at 15).

In support of her claim that the co-packaging is deceptive, Plaintiff references an FDA proposed rule concluding that items that are co-packaged should be intended to be used together so as to prevent consumer confusion. The proposed rule identifies an exception for co-packaged products identified as "convenience packs" or "value packs." The FDA gives the example of a "travel kit' containing items such as an antiperspirant, an internal analgesic, toothpaste, sunscreen, and/or a sleep aid." *Id.* at ¶ 15 (citing 80 Fed. Reg. § 79776-01 *Fixed-Combination and Co-Packaged Drugs*). As there is no potential confusion as to whether such items are to be used together, convenience packs and value packs are not subject to the proposed rule. Plaintiff acknowledges that the product in question was labeled a *Daytime Convenience Pack* but claims the exception does not apply as Defendant fraudulently misrepresented that the items were to be used together.

Plaintiff claims that the disclaimer on the Super C label is insufficient as the co-packaging causes an ambiguity, which cannot be cured with a back label disclaimer. (Doc. 10 at

12) (asserting there should have been a "conspicuous statement.") (citing *Bell v. Publix Super Markets, Inc*., 982 F. 3d 468, 477 (7th Cir. 2020) (noting that the First, Second and Ninth Circuits have found that "fine-print, back-label ingredient list[s]" did not immunize against deceptive advertising claims in the face of "prominent front-label claims.").

Plaintiff claims that she has been economically injured, paying at least $13.49 for the convenience pack which had less value than as represented. She pleads that had she been aware that vitamin C is not an effective treatment for colds and flu, she would have paid less or not purchased it at all. *Id.* at ¶ 39. She claims that she would purchase the product again if there were assurances that the representations were "consistent with its abilities, attributes, and/or composition."[3] *Id.* at ¶ 42.

Proctor & Gamble has moved to dismiss Plaintiff's complaint, asserting that, as the back label on the Super C contains the disclaimer, Plaintiff could not reasonably have been misled. Defendant claims that the complaint is further insufficient as, rather than citing studies disproving the value of Vitamin C, it cites only equivocal findings. Defendant asserts that it cannot be liable under such a theory unless it specifically asserted that studies supported vitamin C as a treatment for colds and flu symptoms. *See* (Doc. 8 at 18) (citing Doc. 1 at ¶ 18) (a mere lack-of-substantiation claim which will not support fraud as "[t]he fact that a claim may be 'unsupported' by studies 'does not make it untrue.'" *Id.* (citing *Gredell v. Wyeth Lab'ys, Inc.*, 854 N.E.2d 752, 756 (Ill. App. Ct. 2006)).

Defendant asserts that the ICFA claim must be dismissed for the additional reason that Plaintiff has not alleged monetary loss or actual damages; that she suffered a concrete or ascertainable loss due to her use of the product. *See Frye v. L'Oreal USA, Inc*., 583 F. Supp. 2d

---

[3] The Court finds the requested relief sparsely pled and contradictory, as will be discussed later.

5

954, 957 (N.D. Ill. 2008) (finding that Plaintiff did not plead discernible damages necessary for an ICFA claim where she had not alleged that the deception affected her "in a way that made her tangibly worse off. Theoretical harm is insufficient. Damages may not be predicated on mere speculation, hypothesis, conjecture or whim.") (internal citation omitted).

Defendant asserts that the failure to plead an ICFA claim also dooms her other state law fraud claims, citing *Trout v. Mondelēz Global, LLC*, 637 F. Supp. 3d 606, 615 (S.D. Ill. 2022). Defendant also denies that the breach of express and implied warranties are properly before the Court as Plaintiff did not provide pre-suit notice. (Doc. 8 at 22). While Plaintiff indicates that the lawsuit itself serves as the required notice, Defendant disputes this, stating that pre-suit notice is required to "encourage parties to resolve the dispute short of litigation." (Doc. 8 at 23) (citing *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 760 (N.D. Ill. 2015). In addition, Defendant claims that it cannot be liable under a theory of breach of an implied warranty where Plaintiff did not buy the product directly from P&G so as to establish privity of contract.

Defendant also challenges the negligent misrepresentation claim as barred by the *Moorman* Doctrine "which prevents recovery in tort for a purely economic loss." (Doc. 8 at 25) (citing *Moorman v. Mfg. Co. v. Nat'l Tank Co.,* 435 N.E. 2d. 443, 450, (Ill. 1982). Defendant also moves to dismiss the common law fraud claims due to Plaintiff's alleged failure to identify any intentionally false statement as to the Super C. In addition, Defendant asserts that the unjust enrichment claim cannot proceed as it arises out of the same conduct as the fraud claim and, if the fraud claim does not survive, neither can the unjust enrichment.

Lastly, Defendant claims that the requested injunctive relief, that Defendant be ordered to "correct the challenged practices to comply with the law" (Doc. 1 at 12) be denied. Defendant asserts that Plaintiff is aware that Super C, and vitamin C in general, are not effective in treating

colds and flu once symptoms are present. As a result, she is not at risk of being deceived in the future, so as to have standing to pursue extraordinary relief. Defendant further asserts that injunctive relief cannot issue as Plaintiff has failed to successfully plead that P&G engaged in wrongful conduct, a prerequisite to the requested relief.

### STANDARD

"A Rule 12(b)(6) motion tests the complaint's sufficiency, not the merits of the case. *Experiential Sys., Inc., Plaintiff, v. Michael Reddish, Defendant*, No. 22-4789, 2023 WL 6311694, at *9 (N.D. Ill. Sept. 28, 2023) (citing *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). When considering such motions, courts "view the complaint in the light most favorable to [plaintiff], accepting all well-pleaded facts as true and drawing all reasonable inferences in his favor." *Smith v. First Hosp. Laboratories, Inc.*, 77 F.4th 603, 607 (7th Cir. 2023) (citing *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013)). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. These requirements ensure that a defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests."

*Twombly*, 550 U.S. at 555. The required level of factual specificity rises with the complexity of the claim. "A more complex case ... will require more detail, both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Fraud claims, including those brought under the ICFA, must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011). In practice, this means that a plaintiff "must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson*, 944 F.3d at 646 (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019)).

## ANALYSIS

As Plaintiff asserts claims under Illinois state law, the Court is to evaluate the state law claims in the same manner as would the Illinois Supreme Court. *Tlaib v. Chattem, Inc.*, No. 23-376, 2023 WL 5830795, at *2 (N.D. Ill. Sept. 8, 2023) (citing *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015)).

### Lack of Substantiation

Defendant asserts that Plaintiff's deceptive advertising claim must be dismissed to the extent it is grounded on an alleged lack of substantiation. *See Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016), explaining that a deceptive advertising claim can be grounded on absolute falsity or "by showing that its proponent lacked a reasonable basis for asserting its truth." *Id.* (quoting *F.T.C. v. Sabal*, 32 F. Supp. 2d 1004, 1007 (N.D. Ill. 1998)). "Under Illinois law, '[l]ack of substantiation is deceptive only when the claim at issue implies there is substantiation for that claim, *i.e.,* if defendants had claimed something along the lines of

8

'tests show that [the product in question] is [ ] effective ...'" *Spector*, 178 F. Supp. 3d at 666

(quoting *Gredell v. Wyeth Laboratories, Inc.*, 854 N.E.2d 752, 756 (2006)). Defendant asserts

that it has never claimed that Super C is effective in treating colds and flu, so it cannot be liable

under the theory that it made an unsubstantiated claim to this effect.

      Plaintiff denies pursuing a lack of substantiation claim. She asserts that Defendant

"misses the point" as her claims are grounded in misrepresentation; that Defendant co-packaged

the Super C with a proven, effective colds remedy to imply that Super C, too, was an effective

colds remedy. As Plaintiff denies asserting a lack of substantiation claim, the Court will give the

issue no further consideration. and will go on to examine whether the act of co-packaging the

two items amounted to a fraudulent misrepresentation in violation of the ICFA.

**ICFA**

      The ICFA safeguards "consumers, borrowers, and business persons against fraud, unfair

methods of competition, and other unfair and deceptive business practices." *Siegel v. Shell Oil

Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201

Ill.2d 403 (2002)). A practice is deceptive under the ICFA "if it creates a likelihood of deception

or has the capacity to deceive." *Floyd v. Pepperidge Farm, Inc.*, 582 F. Supp. 3d 1101, at *3

(S.D. Ill. Jan. 24, 2022) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir.

2001)). "A label is deceptive if it is likely to mislead a reasonable consumer in a material respect,

even if it is not literally false." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir.

2020). An ICFA claim must be pled with the same Fed. R. Civ. P. 9(b) particularity as common

law fraud. *Spector*, 178 F. Supp. 3d at 671.

      To state an ICFA claim, a plaintiff must allege "(1) a deceptive or unfair act or practice by

the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice;

and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel*, 612 F. 3d at 934. An unfair or deceptive practice is one which would cause a reasonable consumer to be deceived. The reasonable consumer test requires "a probability that a significant portion of the general consuming public...acting reasonably in the circumstances, could be misled." *Floyd*, 581 F. Supp. 3d, at *3 (internal citation omitted). Allegedly deceptive labels must be viewed in context as, while a statement might be deceptive in isolation, it may be permissible in conjunction with clarifying language. *Id.*

When considering an ICFA claim, "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober*, 246 F.3d at 940). "The Illinois Supreme Court has held that the facts alleged in a complaint attempting to show fraud under the ICFA must show not just the mere possibility of fraud, but that fraud is a "*necessary or probable inference* from the facts alleged." *Spector*, 178 F. Supp. 3d at 672 (quoting *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 174 (Ill. 1992) (emphasis in original).

Plaintiff's challenged "statement" is the co-packaging of the DayQuil and Super C. Defendant claims this theory of liability is "novel," and it is unaware of any manufacturer being held liable for merely packaging items side-by-side. (Doc. 8 at 15). The Court agrees, noting that neither party has cited a case directly on point. Defendant has cited cases denying fraud where similar products with different ingredients were shelved next to each other. (Doc. 8 at 15) (citing *Winston v. Hershey Co.*, No. 19-3735, 2020 WL 8025385, at *5 (E.D.N.Y. Oct. 26, 2020) (placing "white" non-chocolate candy bars next to chocolate candy bars of the same brand would not cause a reasonable consumer to be misled). The Court does not find the cited product placement cases particularly relevant to the inquiry here as, in those cases, third parties had done

10

the shelving and it was unclear whether this was at the manufacturer's direction. *Id.*; *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 21-22 (N.D. Cal. April 8, 2020).

As noted, Defendant disputes that co-packaging can be a "deceptive communication," claiming that Plaintiff cannot proceed without pointing to a specific misrepresentation as to Super C. In her response, Plaintiff takes the position that she need not identify a specific communication where she is alleging the fraudulent omission or concealment of a material fact. (Doc. 10 at 9).. Plaintiff relies on *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 594 (1996), for the holding that one can proceed under the ICFA without identifying a specific misrepresentation as long as the alleged fraud is based on "[a]n omission or concealment of a material fact in the conduct of trade or commerce . . ."). Defendant disagrees, citing caselaw to support that it is not enough to merely plead the omission or concealment of a material fact without identifying a specific misrepresentation in which it was concealed or omitted. *See Drake v. Toyota Motor Corp.*, No. 20-01421, 2021 WL 2024860, at *3 (C.D. Cal. May 17, 2021) (citing *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 754, n.7 (C.D. Ill. Nov. 30, 2020) (finding in an ICFA claim "[T]he plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions." *Id.* (quoting *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (2009)).

The requirement that there must have been an identifiable communication was discussed in *Guajardo*. There, the plaintiff alleged that defendant's battery-powered lighted shoes were defective, and that defendant had failed to disclose this in its advertising, on the shoe boxes, or the tags affixed to the shoes. The court noted that plaintiff had not alleged "any direct statements that contain material omissions," merely alleging "opportunities or locations where Skechers could have disclosed the alleged defect." *Id.* at 754. The court dismissed the ICFA claim, relying

11

on *O'Connor v. Ford Motor Company*, No. 19-5045, 477 F. Supp. 3d 705, 718–20, (N.D. Ill. 2020). The plaintiff in *O'Connor* had, as here, alleged that defendant knew but failed to disclose a material fact, in that case, a defect in its truck transmissions. *Guajardo* cited *O'Connor* for the holding, "allegations, which were focused on knowledge and a failure to act instead of direct statements, were insufficient to allege a material omission actionable under the ICFA." *Id.* at 755 (collecting cases). The *Guajardo* court found that plaintiff could not plead a material omission under the ICFA without "point[ing] to a direct statement." *Id.*

Still, Plaintiff would broadly construe *Connick* to allow an ICFA action whether or not the alleged fraudulent omission was communicated to the defendant. *O'Connor*, discussing *Connick*, held otherwise. It noted that the *Connick* plaintiffs "received communications from Suzuki, through a car review piece within 'Car & Driver' magazine for which Suzuki provided misleading information." *O'Connor*, 477 F. Supp. 3d at 719-20 (citing *De Bouse*,[4] where the Illinois Supreme Court found that the *Connick* holding was based "on [defendant's] direct statements" that "contained both misleading statements and material omissions."). *De Bouse* went on to state, "We have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission." *See also Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1057 (N.D. Ill. 2022) (quoting *Darne v. Ford Motor Co.*, No. 13-03594, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose."); *Matthews v. Polar Corp.*, No. 22-649, 2023 WL 4534543, at *7 (N.D. Ill. Mar. 22, 2023) (where the defendant did not make specific representations as to the product, the plaintiff could not assert a

---

[4] *De Bouse*, 922 N.E 2d. at 316.

misrepresentation claim.) ("She can't bring a misrepresentation claim about a representation that isn't there.").

As previously noted, Plaintiff offers the additional argument that the co-packaging is misleading as it does not conform to the FDA's proposed rule 80 Fed. Reg. 79776. This states in part: "The Agency interprets the act of shrink-wrapping or otherwise packaging two products together, in the absence of any alternative explanation for the packaging such as 'convenience' or 'value' pack, to be an implied claim that the products are intended to be used together for a common or related therapeutic purpose." The proposed rule also discusses the types of co-packaging which is not covered:

> In some cases, however, OTC drugs are packaged together for convenience, such as a "travel kit" or "convenience kit" that includes an antiperspirant, an internal analgesic, toothpaste, sunscreen, and/or a sleep aid. In other cases, OTC drugs might be packaged together as two or more shrink-wrapped cartons to be sold as one unit identified as a "special value" or "value pack." These individual drugs are not intended to be used together for a common or related therapeutic purpose. Therefore, these types of kits do not meet the proposed definition of co-packaged drug and would not be subject to the requirements of this proposed rule.

*Id.* The result is that co-packaged items must be intended to be used together, except for convenience or value packs which are not intended to be used together and which do not come under the proposed rule.

Plaintiff claims that P&G intended that DayQuil and Super C be used together so the convenience pack exception does not apply. The result is that the items, that consumers would allegedly not use together, are deceptively packaged as intended to be used together. Plaintiff does not address that vitamin C, which admittedly may decrease colds' duration if taken regularly before the onset of symptoms, might be perceived as having a common or related therapeutic purpose with a drug meant to treat the symptoms. In addition, neither party elaborates

13

on the meaning of "intended to be used together." Does the language require that the co-packaged items be used simultaneously, or one right after the other; or is it enough if "together," they serve a common or related therapeutic purpose? The Court need not further address this question, as the violation of an FDA rule will not establish liability for deceptive advertising. *See Rudy v. D.F. Stauffer Biscuit Co., Inc.*, ___ F. Supp. 3d ___, 2023 WL 2711612, at *6 (N.D. Ill. Mar. 30, 2023) (stating, "FDA regulations are only enforceable by the federal government.") (citing 21 U.S.C. § 337(a)). *See id.* (noting that there, as here, the case before the court was "not about the enforcement of FDA regulations" but about whether a reasonable consumer would be misled).

The Court contrasts this matter with cases where defendants' communications were found to violate state fraud statutes. In *Al Haj v. Pfizer Inc.*, 338 F. Supp. 3d 741, 745 (N.D. Ill. 2018), defendant Pfizer's marketing of Maximum Strength Robitussin was found deceptive where defendant advertised that one dose of its Maximum Strength Robitussin contained more medicine than one dose of the Regular Strength Robitussin. However, the recommended dose for the Maximum Strength was double that of the Regular Strength. *Id*. at 747. The court found "it is at least plausible that a reasonable consumer would construe an assertion about a product's relative strength ('Regular' vs. 'Maximum') as one that concerns the product's relative potency and therefore that depends on the *concentration* of the product's active ingredients, not the total *quantity* consumed." *Id*. at 754-55 (emphasis in original).

*In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, MDL No. 05-01699, 2007 WL 2028408, at *2 (N.D. Cal. July 10, 2007) provides another example. There, the court denied a motion to dismiss in a multi-district case asserted under state fraud statutes. This was based on the allegations "that even though Celebrex is no better than traditional NSAIDs,

defendants convinced physicians to prescribe Celebrex and third-party payors to pay for it-at 10-times the cost of traditional NSAIDs-by falsely claiming that it is superior to traditional NSAIDs." *See also Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) (finding ICFA claims sufficiently pled where it was alleged that defendant had omitted to disclose in packaging and advertising that its infant video monitors were unencrypted). The court noted that the unencrypted products cost the same as the encrypted, but allegedly "broadcast the children's images, the inside of the home, and the activities going on within the home for a great distance outside of the consumers' homes." *Id*. at 904.

It is clear that to defeat a motion to dismiss, the Plaintiff must clearly identify a communication which contained a misrepresentation or material omission. Plaintiff has not done so and has failed to plead a cognizable ICFA claim. Even if the Court were to view the co-packaging of the DayQuil and Super C as a "communication," something it is not prepared to do, P&G did not omit a material fact where there was a clear disclaimer on the Super C back label. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. June 9, 2023) ("[T]he front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label."); *See Chiappetta*, 2022 WL 602505 at *5, (dismissing ICFA claim where the plaintiff did not identify "any 'untruths on the packaging' or a plausible deception."); *Jackson v. Kraft Heinz Foods Co*., 2022 WL 4591749, at *4 (N.D. Ill. Aug. 3, 2022) ("Because nothing on the label is untrue or implies something false, it cannot mislead as a matter of law.") (citing *Bober*, 246 F.3d at 938).

"[A] court may dismiss an ICFA claim at the pleading stage if the statement is 'not misleading as a matter of law.'" *Floyd*, 581 F. Supp. 3d at 1109 (quoting *Fuchs v. Menard, Inc.*, No. 17-01752, 2017 WL 4339821, at *3 (N.D. Ill. Sept. 29, 2017)). "Whether a statement is

deceptive is often an issue of fact. . . But not always. A case can't get to a jury unless the statement in question could mislead a reasonable consumer." *Castaneda v. Amazon.com, Inc.*, ___F. Supp. 3d___, 2023 WL 4181275, at *6 (N.D. Ill. June 26, 2023 (citing *Bell*, 982 F. 3d at 481). As the ICFA claim is dismissed for Plaintiff's failure to plead a misleading statement, the Court does not consider Defendant's additional argument that it must be dismissed for Plaintiff's failure to plead actual damages.

**State Consumer Fraud Claims**

Plaintiff alleges claims under the state fraud statutes of Alaska, Arkansas, Kansas, Mississippi, North Carolina, South Dakota, and Utah, without identifying any particular statute by citation or substance. Defendant did not devote argument to these claims, stating in a footnote "Because Plaintiff has failed to plead her individual claim under the ICFA, the claims under other state laws should also be dismissed." (Doc. 8 at 15 n.6) (citing *Trout*, 637 F. Supp. 3d at 615).  In *Trout*, the court dismissed the ICFA claim and thereafter dismissed consumer fraud claims asserted under the acts of five other states as "premised on the same theory of deception as [plaintiff's] ICFA claims." Despite Plaintiff failing to particularly plead these claims, she asserts that Defendant's failure to address them constitutes waiver. (Doc. 10 at 13). Defendant did, however, address this issue, albeit briefly, so there is no waiver. The Court finds, under *Trout*, that the state consumer fraud claims should be dismissed for the same reasons given for the ICFA claim.

**Breach of Express and Implied Warranties**

Plaintiff has pled the breach of an express warranty which requires a showing that the defendant: "(1) made an affirmation of fact or promise; (2) relating to the goods; (3) which was part of the basis for the bargain; and (4) guaranteed that the goods would conform to the

affirmation or promise." *O'Connor*, 477 F. Supp. 3d at 714. Defendant asserts the express

warranty claim must be dismissed as Plaintiff does not allege that P&G ever made any express

statement that Super C alleviates cold and flu symptoms. (Doc. 8 at 22) (citing *Chiappetta*, 2022

WL 602505, at *6). As previously indicated, the Court does not find that the co-packaging of

Super C and DayQuil amounted to an express statement that Super C was an effective cold

remedy and, therefore, does not rise to the level of an express warranty. *See id.* (the finding that

the product packaging was not misleading, was "fatal to [plaintiff's] claims for breach of express

and implied warranties.") (citing *Spector*, 178 F. Supp. 3d at 674).

Defendant also asserts that the express and implied warranty claims should be dismissed

for lack of pre-suit notice. "Under Illinois law, a plaintiff must provide notice to a putative

defendant before filing suit to bring a claim for breach of express or implied warranty." *Rudy v.

Family Dollar Stores*, ___F.Supp.3d___, 2023 WL 2711612 at *7 (citing 810 ILCS 5/2-

607(3)(a)). While there is an exception to this requirement, it only applies where the plaintiff

asserts a personal injury, something not at issue here. *See Connick*, 675 N.E.2d at 591. Although

Plaintiff claims that the suit itself was adequate notice, a plaintiff "cannot satisfy the pre-suit

notice obligation by filing suit." *Chiappetta*, 2022 WL 602505, at *6; *Connick*, 675 N.E.2d at

591 ("The reason for this distinction is that where the breach has not resulted in personal injury,

the UCC indicates a preference that the breach be cured without a lawsuit."). As the Court

dismisses the express and implied warranty claims, it does not consider Defendant's additional

argument that there is no privity of contract for purposes of an implied warranty.

**Claims of Negligent Misrepresentation, Common Law Fraud, and Unjust Enrichment**

Defendant asserts, and the Court agrees, that the negligent misrepresentation and common law fraud claims must be dismissed as Plaintiff has failed to sufficiently plead that P&G made "a false statement of material fact" about the efficacy of Super C in treating cold and flu symptoms. (Doc. 8 at 24). In *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287–88 (Ill. App. Ct. 1st Dist. 2014), the court explained that to adequately plead fraud, a plaintiff must "establish the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations, and to whom they were made." *Id.* (citing *Illinois Non–Profit Risk Management Ass'n v. Human Service Center of Southern Metro–East*, 884 N.E.2d 700 (2008) (Ill. App. Ct. 1st Dist. 2013). "Negligent misrepresentation has essentially the same elements, except that the defendant need not know that the statement is false; rather his own carelessness or negligence in ascertaining the truth of the statement will suffice." *Id.* (citing *Board of Education of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580 (1989)). The result is that both fraud and negligent misrepresentation require a false statement of material fact, something not pled here.

Defendant raises the additional argument that this claim may not proceed due to the *Moorman* Doctrine or "economic loss rule" which prevents recovery in tort for a purely economic loss. *See Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443, 450 (1982) ("The remedy for economic loss, loss relating to a purchaser's disappointed expectations . . . lies in contract."). Defendant asserts that *Moorman* applies as Plaintiff's claimed injury is solely economic, the money she spent purchasing the Daytime Convenience Pack. *See* (Doc. 8

at 25) (citing *Manley v. Hain Celestial Group, Inc.*, 417 F. Supp. 3d 114, 1120–21 (N.D. Ill. Sept. 30, 2019) (applying *Moorman* to consumer's negligent misrepresentation claim).

Plaintiff responds that an exception to *Moorman* applies as P&G, due to its status as a "leader in OTC remedies . . ."  had a non-delegable duty, outside of contract, to provide non-deceptive information. (Doc. 10 at 16). Plaintiff cites *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994), where it was held that "learned intermediaries," such as accountants and attorneys "in the business of supplying information for the guidance of others in their business transactions," may be liable in tort even if the client has suffered only economic loss. Plaintiff offers nothing further to support that this exception applies here. Defendant, for its part, denies it is a learned intermediary, claiming that the information it provides is merely "ancillary to the sale of its product." (Doc. 8 at 19). *See Manley*, 417 F. Supp. 3d at 1120-21 (applying *Moorman* to bar a tort action against a manufacturer of sunscreen, as defendant was not "in the business of supplying information for the guidance of others in their business transactions…"). Here, Plaintiff fails to support that P&G had the status of a learned intermediary so as to come under the exception to the *Moorman* Doctrine. As a result, even if the Court had found a negligent misrepresentation by P&G, it would be barred under *Moorman*.

As to the unjust enrichment claim, Defendant rightly asserts that Plaintiff cannot proceed where she has failed to successfully plead fraud. *See Reinitz v. Kellogg Sales Co.*, No. 21-1239, 2022 WL 1813891, *6 (C.D. Ill. June 2, 2022) (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). "[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim."; *Spector*, 178 F. Supp. 3d at 674 (dismissing unjust enrichment claim "predicated on the same allegations of deceptive

advertising as [were dismissed in] Plaintiff's ICFA and breach of express warranty claims");

*Bober*, 246 F.3d at 943 (dismissing unjust enrichment claim where plaintiff had failed to plead

deception); *Gardner v. Ferrara Candy Co.*, No. 22-1272, 2023 WL 4535906, at *8 (N.D. Ill.

Mar. 22, 2023) ("[u]nder Illinois law, unjust enrichment is not a separate cause of action. Rather,

it's a condition brought about by fraud or other unlawful conduct. Because all of Plaintiff's other

claims fail, so too does her unjust enrichment claim.") (internal citations omitted).

### Claim for Injunctive Relief

Plaintiff asserts that she "intends to, seeks to, and will purchase the Product again when

she can do so with the assurance its representations are consistent with its abilities, attributes,

and/or composition[.]" (Doc. 1 at § 42). She requests injunctive relief in the form of an order

that Defendant "correct the challenged practices to comply with the law[.]" (Doc. 1 at 12).

However, Plaintiff fails to establish standing as she is now aware that Super C is not effective in

treating the symptoms of colds and flu. *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir.

2017) ("To have standing for prospective injunctive relief, a plaintiff must face a 'real and

immediate' threat of future injury as opposed to a threat that is merely 'conjectural or

hypothetical'") (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). *See also Benson v.

Fannie May Confections Brands, Inc.*, No. 17-3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28,

2018) (finding where plaintiffs were aware of defendant's alleged deceptive practices, "Plaintiffs

cannot claim they will be deceived again in the future... absent some concrete basis to conclude

that the plaintiffs will or must purchase the product again in the future and be deceived, they

cannot meet the standing requirements for injunctive relief claims.").

Plaintiff responds that the deceptive practice continues so she remains at threat of future

injury. She has devoted only a scant paragraph of argument to this issue, taking the inconsistent

positions that, although consumers would not use the co-packaged Vitamin C and DayQuil together for a common purpose, she would purchase the co-packaged product in the future, if given certain assurances. What "assurances" could convert Super C into a colds remedy, as Plaintiff claims this is the only reason to buy the co-packaged products? Plaintiff has not alleged that she takes vitamin C in any form so what "assurance" would induce her to buy it if co-packaged with DayQuil? If Plaintiff's request is that the products to be packaged separately, this does not require a court order as the items may, already, be bought separately.[5]

The Court finds the requested relief ill-defined and nonsensical, apparently filed with little thought. Defendant notes that Plaintiff's counsel, Spencer Sheehan, has authored a barrage of consumer fraud claims, filing cases in the district courts of California, Colorado, Illinois, Indiana, Florida, Tennessee, Michigan, Wisconsin, and the District of Columbia. Mr. Sheehan has filed 65 cases in the Seventh Circuit alone. Counsel employs a form complaint, asserting violations of the ICFA, other states' fraud statutes, express and implied warranty, negligent misrepresentation, common law fraud, and unjust enrichment.[6] In addition, he frequently moves for injunctive relief, claiming that the plaintiffs are subject to future injury due to the ongoing fraud. In *Reinitz*, 2022 WL 1813891, this particular Court denied the same word-for-word request for injunctive relief asserted *sub judice*. *See id.*, No. 21-1239 (Doc. 1 at 14-15), finding that as plaintiff was aware that the fudge product did not contain milkfat, she was "not susceptible to 'being revictimized.'" (quoting *Benson*, 2018 WL1087639, at *5).

---

[5] See <u>Vicks Super C Energize + Replenish* Daytime Supplement Caplets | Vicks</u> (last visited Oct. 23, 2023; <u>DayQuil Cough, Cold & Flu Medicine for Daytime Relief | Vicks</u> (last visited Oct. 23, 2023).

[6] *See Gardner v. Ferrara Candy Co.*, No. 22-1272 (N.D. Ill. Apr. 6, 2023) (Doc. 28) (collecting cases) ("By the look of things, attorney Sheehan is filing consumer fraud cases over and over again, seemingly covering just about every aisle in the grocery store, without much success ....").

Counsel has been advised on multiple occasions, by courts throughout the country, that a plaintiff does not have standing for injunctive relief where the plaintiff is aware of the alleged deception and is no longer subject to being injured by it. Despite this, counsel continues to seek injunctive relief on the same oft-cited basis. *See*, *e.g.*, *Palmer v. Procter & Gamble Co*., No. 22-5036, 2023 WL 5852252, at *2 (N.D. Ill. Sept. 11, 2023) (stating, "Indeed, most courts to address similar issues agree that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice."); *Gibson v. Eagle Family Foods Group LLC*, No. 22-02147, 2023 WL 5574625, at *3 (S.D. Ind. Aug. 29, 2023) (finding, "Without a 'showing of any real or immediate threat that the plaintiff will be wronged again,' [a plaintiff] lack[s] standing to request, and the district court lack[s] jurisdiction to award . . .[a] permanent injunction." (quoted cite omitted); *DeMaso v. Walmart Inc.*, No. 21-06334, 2023 WL 1800208, at *n.2 (N.D. Ill. Feb. 7, 2023) (dismissing injunctive relief for lack of standing.); *Chiappetta*, 2022 WL 602505 at *10 (same); *Kinman v. Kroger*, 604 F. Supp. 3d 720, 732 (N.D. Ill. May 27, 2022) (same).

While it is not clear that Plaintiff could plead a colorable claim under these facts, the Court will grant her an opportunity to amend. Plaintiff's counsel is cautioned, however, that there must be a good faith basis for an amended complaint. *See Gordon v. Target Corp*., No. 20-9589, 2022 WL 836773, at *19, n.11 (S.D. N.Y. March 18, 2022) ("the Court is well aware that Plaintiff's counsel routinely files cases such as these, which bring identical claims, and that they are just as routinely dismissed for failure to state a claim. This Court will not hesitate to follow the example of a growing number of its sister courts and dismiss Plaintiff's claims with prejudice should Plaintiff present this Court with the same allegations in a second amended complaint.") (internal citations omitted).

## V. CONCLUSION

Defendant's Motion to Dismiss (Doc. 7), is GRANTED. Plaintiff will be given an opportunity, within 14 days, to file an amended complaint consistent with this Order and Opinion.


Signed on this 24th day of October 2023.


                                        s/James E. Shadid
                              _____
                                    JAMES E. SHADID
                              UNITED STATES DISTRICT JUDGE